Filed 10/29/20 In re J.C. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | B305431 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP00261B) |
| Plaintiff and Respondent, | |
| v. | |
| JASON C., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge. Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Senior Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Father Jason C. appeals from the jurisdictional findings concerning the risks to his then two-year-old son, J.C., arising from his mental and emotional issues. He contends the dispositional orders must be reversed if the jurisdictional findings are reversed. Mother S.E. has not appealed the jurisdictional findings concerning her substance abuse. We find father's jurisdictional challenge is nonjusticiable, and affirm the orders below.

## BACKGROUND

Since this appeal is nonjusticiable, we describe briefly a few facts about this family. There have been several referrals concerning this family since 2017. The family most recently came to the attention of the Los Angeles County Department of Children and Family Services (the Department) in September 2019, following a referral that mother and father were fighting in the presence of J.C. and his then 12-year-old half sister K.S., and that law enforcement was dispatched to the home. (K.S. has a different father, and she is not at issue in this appeal.)

According to the reporting party, father has a history of verbally abusing K.S. When a social worker responded to K.S.'s school to investigate the referral, K.S. reported that she had kicked over father's motorbike, and father told her he wanted to hit her. According to K.S., she pushed his motorbike because she was angry father spit on mother and accused mother of "hoeing around" after she and the children returned home late after visiting family. Father is controlling and calls mother names. Mother and father were arguing through the night, and K.S. was unable to sleep. She brought J.C. into her room to protect him. K.S. believed father was bipolar based on his erratic behavior. K.S. also told the social worker father smokes marijuana in the home.

Mother admitted she and father sometimes argue in front of the children, and father calls mother names, is controlling, loud,

rude, and accuses her of cheating on him. Father does not help pay the rent or bills.

According to a law enforcement call log, police had been dispatched to the family's home three times in 2019. One of the calls was for a child abuse investigation, after K.S. reported father threw her to the floor. The other two calls related to the September 2019 incident.

Mother and father also have a history of substance abuse. They participated in inpatient treatment in 2015, and outpatient treatment from 2016 to 2017.

Father was diagnosed with schizophrenia in 2004 but has not been receiving mental health services or medication, despite having been prescribed medication in the past.

Father has an extensive criminal history, spanning 1992 until 2015, with over 35 arrests, including multiple terms in prison for grand theft, being a felon in possession of a firearm, extortion, and violation of parole, and jail terms for receiving stolen property and burglary.

The Department obtained a removal warrant and removed the children on January 14, 2020, after receiving a referral that mother had tested positive for amphetamines, methamphetamines, and marijuana at the hospital, even though she was six months pregnant.

According to the jurisdiction/disposition report, mother denied having a substance abuse problem, but admitted to using marijuana while pregnant for pain relief. Mother had positive drug tests for marijuana on January 14, 2020, and January 28, 2020. She denied that father had any substance abuse or mental health history. However, father tested positive for marijuana on February 4, 2020. He denied using drugs and could not explain his positive test.

Father stated he was diagnosed with schizophrenia in 2005 while in prison, and that he feigned mental illness so that he would not be housed in "general population." Father denied he needed treatment. He admitted he received a diagnosis for depression in 2016, and participated in counseling.

At a February 14, 2020 pretrial release investigation hearing, the court ordered the children released to mother and father, over the Department's objection, conditioned upon the parents' participation in services and cooperation with the Department.

A February 24, 2020 last minute information for the court noted that father was testing negative for all substances. Mother tested positive for marijuana on February 7, 2020, but she submitted two negative tests thereafter. Father had started receiving mental health services and had attended an intake appointment on January 24, 2020.

At the adjudication hearing, mother plead no contest, father submitted on the Department's reports, and the court sustained allegations under Welfare and Institutions Code section 300, subdivision (b) based on mother's substance abuse history, and father's "mental and emotional problems, including a diagnosis of Schizophrenia. . . ." Father was ordered to participate in random and on demand drug testing, parenting classes, and individual counseling. Father's counsel agreed with these orders. The children were ordered to remain at home with mother and father, under the supervision of the Department. Father timely appealed.

## DISCUSSION

Father contends insufficient evidence supports the court's jurisdictional findings regarding his mental health. He does not contest the jurisdictional findings concerning mother, and mother has not appealed.

4

The focus of dependency proceedings is on the protection of minor children. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491-1492.) To acquire jurisdiction over a child, a juvenile court need only "find that one parent's conduct has created circumstances triggering [Welfare and Institutions Code] section 300." (*Id.* at p. 1491.) "[I]t is commonly said that a jurisdictional finding involving one parent is ' "good against both. More accurately, the minor is a dependent if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent." ' [Citation.]" (*Id.* at p. 1492.) " 'This accords with the purpose of a dependency proceeding, which is to protect the child, rather than prosecute the parent.' [Citation.]" (*In re X.S.* (2010) 190 Cal.App.4th 1154, 1161.) As a result, "an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence." (*In re I.A.*, at p. 1492.)

Even if we considered reversing the jurisdictional findings as to father, the juvenile court would retain jurisdiction over J.C. based on the sustained and unchallenged allegation against mother. Therefore, father's attack on the jurisdictional findings relative to his conduct alone is nonjusticiable. (*In re I.A.*, *supra*, 201 Cal.App.4th at pp. 1490-1491.)

Father asks to consider his challenge to the jurisdictional findings because the outcome of the appeal is the difference between father being offending or nonoffending, and reasons he would not be required to participate in services if the jurisdictional order were reversed. We decline to address father's contentions. It is well settled that the juvenile court has broad discretion to order even nonoffending parents to participate in services. (*In re I.A.*, *supra*, 201 Cal.App.4th at p. 1492; see also Welf. & Inst. Code, § 362.) And, in any event, we can discern no prejudice, as father

5

agreed to the dispositional orders, and the jurisdictional findings are well founded.  (*In re Richard K.* (1994) 25 Cal.App.4th 580, 589-590; *id.* at p. 590 ["he who consents to an act is not wronged by it"]; see also *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219 [a finding of mental illness is prima facie evidence of the inability of a parent to provide regular care, resulting in a substantial risk of physical harm, with respect to children of " 'tender years' "].)

## DISPOSITION

The orders are affirmed.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


WILEY, J.

6